IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-546-D

| | |
|---|---|
| ANTHONY MCNEILL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

In this action, plaintiff Anthony McNeill ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 24, 27). Each party filed a memorandum in support of its motion (D.E. 25, 28). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 29). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 19 June 2007, alleging a disability onset date of 19 June 2007. Transcript of Proceedings ("Tr.") 20. The applications were denied

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

initially and upon reconsideration, and a request for hearing was timely filed. Tr. 20; 99-127. On 29 October 2009, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 38-75. At the hearing, plaintiff amended his onset date to 15 April 2007. Tr. 20, 44, 45, 206. In a written decision dated 14 December 2009, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 20-32. Plaintiff timely requested review by the Appeals Council. Tr. 16. The Appeals Council admitted new evidence submitted by plaintiff, but denied the request for review on 8 August 2011 without making any supporting findings.[1] Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 7 October 2011, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1); Am. *In Forma Pauperis* Mot. (D.E. 4); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

B. **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

---

[1] The Appeals Council stated simply:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the [ALJ's] decision.

Tr. 1-2.

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.     **Findings of the ALJ**

Plaintiff was 49 years old on the alleged onset date of disability and 52 years old on the date of the administrative hearing. Tr. 31 ¶ 7; 46. He has an 11th grade education and past work as a shipping/warehouse worker, dump truck operator, cafeteria attendant, painter, and construction trade worker. Tr. 31 ¶ 6; 46.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 22 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that are severe within the meaning of the Regulations: diabetes mellitus; substance abuse disorder involving alcohol; liver disease; organic brain disorder secondary to chronic alcoholism; a torn medial meniscus; degenerative joint disease; and disorders of the back. Tr. 22 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings, including Listing 12.05C for mild mental retardation. Tr. 23-25 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work (*i.e.*, work involving lifting, carrying, pushing, or pulling up to 20 pounds occasionally and 10 pounds frequently). *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).[2] Specifically, he found that

---

[2] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV.c, def. of "Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 20 Feb. 2013). "Light work" and the other terms for

plaintiff could perform simple, routine, unskilled tasks; in an 8-hour workday, could walk half a mile, stand for 4 hours subject to alternating to sitting after no more than 15 to 30 minutes of standing, and sit at least 6 hours subject to alternating to standing after an hour of sitting; and could do no climbing, squatting, kneeling, or crawling, and only occasional stooping. Tr. 25 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work. Tr. 30 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including cashier, checker/examiner, and assembler of small products. Tr. 31-32 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 32 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat

---

exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

less than a preponderance. *Perales*, 402 U.S. at 401. Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2 (holding that Commissioner's decision implicitly determining claimant not to have a severe mental impairment and failing to consider the effect of any such impairment on his ability to work was not supported by substantial evidence in light of additional evidence of claimant's depression admitted by Appeals Council, and remanding case to Commissioner for further proceedings).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131

F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contentions

Plaintiff advances two principal grounds for reversal of the Commissioner's decision: first, that the Appeals Council erred by not reviewing the ALJ's decision with respect to his Listing 12.05C ruling based on the additional evidence submitted and, second, that the ALJ failed to consider the opinion of a nurse who evaluated him for in-home personal care through Medicaid. Each ground is addressed in turn below.

### C. ALJ's Determination regarding Listing 12.05C

Plaintiff submitted to the Appeals Council and it admitted into evidence[3] two exhibits: a better quality copy of plaintiff's academic record (Tr. 1182-84) than the copy the ALJ had before him (Tr. 257-59) showing both digits of plaintiff's IQ score of 67 rather than simply the "6" as on the copy before the ALJ; and a copy of a letter from the North Carolina Department of Health and Human Services ("NCDHHS") (Tr. 11) not before the ALJ at all notifying plaintiff that it found him eligible for Medicaid disability benefits. Plaintiff argues that because these exhibits comprised new and material evidence under 20 C.F.R. §§ 404.970(b), 416.1470(b), these regulations required the Appeals Council to review the ALJ's decision and in particular his ruling on Listing 12.05C, and that it erred by not doing so.

The Appeals Council's denial of review is not reviewable in this court because under the Regulations it is nonfinal agency action. *See* 20 C.F.R. §§ 404.981, 416.1481; 42 U.S.C. §§

---

[3] While the Appeals Council did not include the NCDHHS letter in its order admitting additional evidence (*see* Tr. 5), the Commissioner states in his brief that the Appeals Council did consider it (Comm'r's Mem. 12). The court will therefore deem the NCDHHS letter to be part of the record.

405(g) (permitting appeals of "any final decision of the Commissioner" regarding DIB), 1383(c)(3) (providing for appeals on final decisions of the Commissioner on SSI pursuant to § 405(g) to the same extent as final decisions regarding DIB); *see also Calvey v. Astrue,* No. CV 12-0472-JPR, 2013 WL 180033, at *3 (C.D. Cal. 17 Jan. 2013) ("The Court '[does] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.'" (quoting *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012))); *Barnes v. Astrue,* No. 12-29-JBC*,* 2013 WL 66216, at *4 (E.D. Ky. 4 Jan. 2013). Instead, the Appeals Council's denial of review rendered the ALJ's decision the final decision of the Commissioner, and it is that decision which is now before the court. *See* 20 C.F.R. §§ 404.981, 416.1481; 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Calvey*, 2013 WL 180033, at *3; *Barnes,* 2013 WL 66216, at *4. After careful consideration of the record as supplemented, as it must,[4] the court finds that the ALJ failed to adequately explain his ruling on Listing 12.05C and the court therefore cannot determine whether it is supported by substantial evidence. This case should accordingly be remanded for further consideration.

To meet Listing 12.05C, a claimant's impairment must first satisfy the introductory diagnostic description of mental retardation: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05C; *see* Listing 12.00A. To establish the required level of severity for this disorder under Listing 12.05C, the claimant must satisfy two additional requirements: he must have (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other

---

[4] The court would reach the same conclusion on the basis of the record without the additional evidence admitted at the Appeals Council level. The additional evidence does, though, serve to enhance the deficiency in the decision.

mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05C. Listing 12.05C reflects the unique relationship between mild mental retardation and the ability to work:

> [T]he Secretary, in promulgating Listing 12.05C, expressly singled out individuals with [m]ild [m]ental [r]etardation for special treatment in determining entitlements to disability benefits. . . . . DSM–IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . . Therefore, the fact that [a claimant] has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments.

*Radford v. Astrue*, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. 14 May 2009) (mag. judge's mem. & recommendation) (internal quotation marks and citations omitted), *adopted*, 2009 WL 1675958 (10 June 2009). Thus, there are three requirements for meeting Listing 12.05C, namely, satisfaction of the diagnostic description and the two severity requirements.

After discussing plaintiff's nonsatisfaction of section D of Listing 12.05, the ALJ found that plaintiff did not meet[5] Listing 12.05 as a whole, thereby including 12.05C, because he did not satisfy the requirement in the diagnostic description that deficits in adaptive functioning be manifested during the developmental period. The ALJ stated:

> Turning back to Social Security listing 12.05, the requirements of that listing are not met because the claimant has not had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence does not demonstrate or support onset of the impairment before age 22.

Tr. 25 ¶ 4.

---

[5] The ALJ did not separately address whether plaintiff's impairment medically equals Listing 12.05C, and it otherwise appears that he intended his finding that plaintiff's impairment did not meet the listing to include the determination that it did not medically equal the listing. The court will therefore not address separately whether the impairment medically equals the listing.

9

By citing only nonsatisfaction of the diagnostic description for his determination, the ALJ implicitly determined that plaintiff did satisfy the severity criteria for Listing 12.05C. Substantial evidence supports this determination. As to plaintiff's IQ, in addition to the IQ score of 67 in plaintiff's academic record (Tr. 1182), consulting Disability Determination Services ("DDS")[6] psychologist Bert A. Lucas, Ph.D. stated in his 2 November 2007 evaluation of plaintiff that plaintiff achieved a performance score of 65 and a full-scale score of 66 on the Weschler Adult Intelligence Scale-III. Tr. 747. Plaintiff's possession of a work-related limitation of function is established under Fourth Circuit precedent by the ALJ's determination that plaintiff cannot return to his past relevant work. *See Flowers v. U.S. Dept. of Health and Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05(C)."); *Luckey v. U.S. Dept. of Health and Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) ("Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of section 12.05(C).").

The ALJ gave four reasons for his determination that plaintiff did not manifest deficits in adaptive functioning before age 22: (1) "the record shows the claimant was capable of independently caring for his personal needs including grooming and eating before age 22"; (2) "[h]e reported that he has an 11th grade education"; (3) "[h]e reported that he . . . did not attend special education classes"; and (4) "he reported that he completed specialized training through

---

[6] The Disability Determination Services is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 20 Feb. 2013).

the Job Corp[s] in 1976." Tr. 25 ¶ 4. Examination of these reasons raises serious questions about the extent to which they adequately support the ALJ's ruling on listing 12.05C. [7]

As to the finding that plaintiff was capable of independently caring for his personal needs before age 22, the ALJ does not cite to the evidence underlying this determination, and it is not apparent on what he relies. The Commissioner in his brief also does not identify supporting evidence. (Comm'r's Mem. 14). More fundamentally, this finding relates to the most elemental skills of self-care, such as the ability to feed oneself. The absence of deficits in this area, while important, leaves open the possibility of deficits in myriad more demanding functional areas. Other areas in which deficits in adaptive functioning may exist include "communication, . . . home living, social/inter-personal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." *Hiott v. Astrue*, No. 3:11330-JRM, 2012 WL 5874455, at *5 (D.S.C. 20 Nov. 2012) (citing *Jackson v. Astrue*, No. 10–2226, 467 Fed. Appx. 214, 218, 2012 WL 580239, at *3-4 (4th Cir. 23 Feb. 2012)).

As to plaintiff's completion of 11th grade, the record shows clearly that plaintiff did, in fact, complete it, as the ALJ found. *See* Tr., *e.g.*, 46, 214, 1182. While the fact that he completed that grade does tend to support the ALJ's ruling, the concomitant fact that he dropped out of high school is evidence of a deficit in adaptive functioning. *See*, *e.g.*, *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (dropping out of school in the 9th grade and other academic failings constituted evidence of mental retardation prior to age 22); *Watson v. Atrue*, No. CBD-11-2491, 2013 WL 136425, at *7 (D. Md. 9 Jan. 2013) ("Plaintiff's educational record of failed

---

[7] The court does not agree with plaintiff's apparent contention that submission of the better quality copy of his academic record alone requires remand. The original copy showed the digit in the tens column of the score (*i.e.*, "6"), indicating that the score was in the 60's and thereby within the range for mild mental retardation under Listing 12.05C. Moreover, absent evidence of a change in a claimant's intellectual functioning, the claimant's IQ is assumed to be constant. *Luckey v. U.S. Dept. of Health and Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989). Therefore, the subsequent IQ scores obtained by Dr. Lucas would seemingly be sufficient to establish "significantly subaverage general intellectual functioning" of plaintiff under Listing 12.05 prior to age 22.

11

classes, enrollment in special education, participation in the KAPS drop-out prevention program, and eventual dropping out are sufficient evidence of an onset during childhood."); *Herron v. Astrue*, No. 5:12-CV-44, 2012 WL 4747270, at *10 (N.D. W. Va. 24 Aug. 2012) (mag. judge's rep. & recommendation) (noting that district courts in the Fourth Circuit have found that "a claimant's illiteracy, failure to graduate from high school, enrollment in special education classes, and poor grades, are all important when reviewing whether a claimant has deficits in adaptive functioning in academic skills"), *adopted*, 2012 WL 4747264 (4 Oct. 2012).

Moreover, plaintiff's academic record also shows that he completed only four classes in 11th grade (as opposed to five in his other years of high school) and had a grade average of about 67. *See* Tr. 1182. This same record indicates that plaintiff repeated 9th grade. *See* Tr. 1182. His academic record as a whole is replete with low grades. *See* Tr. 1182. For example, in 8th grade, he received one "C," three "Ds," and one "E." *See* Tr. 1182. Poor academic performance has been recognized as evidence of a deficit in adaptive functioning. *See*, *e.g.*, *Watson*, 2013 WL 136425, at *7; *Herron*, 2012 WL 4747270, at *10. The ALJ does not address any of this evidence.

In support of his finding regarding special education, the ALJ cites to an undated and unsigned report purportedly provided by plaintiff stating "No" to the question, "Did you attend special education classes?" Tr. 214. This report is flatly contradicted by plaintiff's specific hearing testimony that he did attend special education classes:

> Q And were you in any special education in classes in school?
> A Yup, my English classes, my sophomore -- between my sophomore and senior year.

Tr. 46. The ALJ did not ask plaintiff at the hearing about the discrepancy between the report and his testimony. In his decision, he offers no explanation why he relies on the undated and

12
Case 5:11-cv-00546-D   Document 30   Filed 02/20/13   Page 12 of 19

unsigned report rather than plaintiff's sworn testimony. Attendance at special education classes is evidence of a deficit in adaptive functioning. *See*, *e.g.*, *Watson*, 2013 WL 136425, at *7; *Herron*, 2012 WL 4747270, at *10; *Edwards v. Comm'r of Soc. Sec.*, No. 1:07–CV–848, 2008 WL 4425587, at *8 (W.D. Mich. 9 Sept. 2008) (citing claimant's participation in special education classes and inconsistent work history as evidence of deficits in adaptive functioning); *Lombard v. Barnhart*, No. 02–146–B–W, 2003 WL 22466178, at *3 (D. Me. 31 Oct. 2003) (holding claimant's status as a special education student and his inability to read and write as sufficient evidence of onset prior to age 22, despite evidence that claimant had received good grades in school and had worked for at least 18 years).

Lastly, in support of his finding that plaintiff completed a Job Corps program on house painting in 1976, he cites to the same undated and unsigned report previously discussed (Tr. 214), although plaintiff appeared to confirm in his testimony that he at least attended the program (Tr. 46-47).[8] More significantly, the ALJ cites to no evidence regarding the level of difficulty of this program (*e.g.*, basic, advanced), its duration (*e.g.*, a day, a week, months), or how plaintiff performed.

The concerns regarding the four reasons given by the ALJ for his Listing 12.05C determination are enhanced by the inclusion in the record of several diagnoses that plaintiff had mild mental retardation. Such a diagnosis seemingly presumes onset of the condition during the developmental period. *See* Listing 12.05; *Diagnostic and Statistical Manual of Mental*

---

[8] Plaintiff's testimony reads:

> Q Okay. Do you have any special vocational training that you've received?
> A Yeah, I went to job [INAUDIBLE] in 1976, and I went there for painting.
> Q What type of painting?
> A Vocational painting, house painting.

Tr. 46-47.

*Disorders* 49 (4th ed., Text Revision (2000)) ("DSM–IV–TR") (listing as one of three diagnostic criteria for mental retardation "[t]he onset is before age 18 years").[9] The ALJ's determination that plaintiff's impairment did not manifest itself during the developmental period therefore arguably conflicts with these diagnoses. *See*, *e.g.*, *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (noting discrepancy between ALJ's determination that claimant did not satisfy the diagnostic definition of Listing 12.05 and his acceptance of the mild mental retardation diagnosis by two psychologists).

One such diagnosis was made by Dr. Lucas. Tr. 749. He further found that plaintiff functioned in the mild range of mental retardation with slightly better verbal than performance skills. Tr. 749. He also opined that plaintiff's greatest problem appears to be medical compliance regarding his physical problems and that he could tolerate the stress and pressures of working. Tr. 749. Interestingly, the ALJ gave Dr. Lucas's opinions "significant weight" without addressing their apparent differences regarding the onset of plaintiff's retardation during the developmental period. Tr. 29 ¶ 5. Notably, Dr. Lucas made his diagnosis of mild mental retardation and other findings even without the benefit of plaintiff's hearing testimony that he attended special education classes. Indeed, Dr. Lucas may have relied on the same report cited by the ALJ that plaintiff did not attend any special education classes. *See* Tr. 745 ("[P]rior to the evaluation session, I perused all information included in his disability packet."); 748 ("He reports attending school to the 11th grade but did not report being in any special education classes throughout his formal educational experience.").

---

[9] "The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders." *United States v. Wooden*, 693 F.3d 440, 452 n.4 (4th Cir. 2012) (internal quotation marks omitted). "The definition of M[ental] R[etardation] we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations," including the definition in the DSM. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018–01, at 20022 (24 Apr. 2002).

Nonexamining DDS psychiatrist Giuliana Gage, M.D. also found that plaintiff suffered from mild mental retardation, albeit without listing level deficits, in a 24 November 2008 psychiatric review technique form. Tr. 30 ¶ 5; 908. The ALJ afforded Dr. Gage's opinions "significant weight," again without mentioning the apparent discrepancy regarding onset during the developmental period. Tr. 30 ¶ 5. Like Dr. Lucas, Dr. Gage was necessarily unaware of the subsequent testimony by plaintiff that he attended special education classes.

Nonexamining DDS consulting psychologist Ben Williams, Ph.D. had also found in a 25 January 2008 psychiatric review technique form that plaintiff had mild mental retardation. Tr. 783. He further determined that the retardation did not meet any listing, apparently because of reports that plaintiff performed independent activities of daily living, not because of absence of onset before age 22. Tr. 783. The ALJ did not address Dr. Williams' diagnosis in his decision, although he did discuss favorably his findings in a mental RFC form (Tr. 793-96) to the effect that plaintiff is not disabled. Tr. 30 ¶ 5. Dr. Williams, of course, also did not know of plaintiff's eventual testimony that he attended special education classes.

The 6 December 2007 NCDHHS letter submitted for the first time at the Appeals Council level also raises concerns about the sufficiency of the ALJ's Listing 12.05C ruling. As indicated, the letter notified plaintiff that he had been approved for Medicaid disability benefits. Significantly, NCDHHS based the approval on its determination that plaintiff met listing 12.05C. Tr. 11.

While, as the letter itself indicates, it has no legal effect on DIB or SSI claims, an ALJ is required to consider decisions of other agencies, including Medicaid decisions, on a claimant's disability. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6-7 (9 Aug. 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored

15

and must be considered."). "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id.* at *7. Failure to discuss a Medicaid decision can require remand. *Davis v. Astrue*, 7:10–CV–00231–D, 2012 WL 555782, at *5 (E.D.N.C. 5 Jan. 2012) (mag. judge's mem. & recommendation) ("In the present case, the ALJ not only failed to explain the consideration given, but completely failed to even acknowledge the NCDHHS decision. In such cases, this Court has determined that remand is necessary to allow the ALJ to consider the NCDHHS decision and explain its consideration in the ALJ's analysis."), *aff'd and adopted*, 2012 WL 555304 (E.D.N.C. 17 Feb 2012); *Walton v. Astrue*, No. 7:09–CV–112–D, 2010 WL 2772498, at *1 (E.D.N.C. 9 July 2010) (remanding for further consideration where "the ALJ said nothing [regarding the NCDHHS decision], and SSR–06–3p requires more than 'nothing'"); *Bridgeman v. Astrue*, No. 4:07–CV–81–D, 2008 WL 1803619, at *1, *10 (E.D.N.C. 21 Apr. 2008) (remanding for further explanation where ALJ mentioned Medicaid ruling, but dismissed its relevance without discussion). Needless to say, the ALJ's analysis here was not informed by the determination by the NCDHHS.

An ALJ is required to "to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the [Commissioner's] ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). In light of the foregoing considerations, the court finds that the ALJ failed to build such a bridge with respect to his ruling on Listing 12.05C. That is particularly so since the ALJ, tracking the diagnosic description of Listing 12.05, found not only that the evidence does not "demonstrate" onset of the impairment before age 22, but also that it does not even "support" such onset. Tr. 25 ¶ 4. This case should accordingly be remanded. *See*, *e.g.*, *Jackson v. Astrue*, No. 10–2226, 467

16

Case 5:11-cv-00546-D   Document 30   Filed 02/20/13   Page 16 of 19

Fed. Appx. 214, 218, 2012 WL 580239, at *3-4 (4th Cir. 23 Feb. 2012) (remanding case for ALJ to consider evidence concerning Listing 12.05 where court "cannot say that substantial evidence supports the finding that Jackson failed to establish this prong [of Listing 12.05] where new and material evidence submitted to the Appeals Council contradicts both the ALJ's findings and underlying reasoning, and the Appeals Council failed to provide any reason for disregarding this additional evidence"); *Radford*, 2009 WL 1675958, at *7 (remanding case where ALJ failed to properly articulate his findings to support the conclusion that claimant lacked the deficits in adaptive functioning required under Listing 12.05C). On remand, the Commissioner should make findings that sufficiently explain the weight given plaintiff's academic record and the NCDHHS letter, along with the other probative evidence, and that would permit meaningful judicial review, if necessary.

### D. Consideration of Nurse's Opinion

On 24 September 2009, registered nurse Eugenia Spearman, R.N. assessed plaintiff for Medicaid in-home personal care services. *See* Tr. 1171-74.[10] Based on her assessment of plaintiff's ability to perform various activities of daily living, both basic and instrumental[11] (Tr. 1172-73), she determined that plaintiff required a weekly total of 12.5 hours of personal care services in such areas as mobility; eating; bathing; dressing; meal preparation; and home

---

[10] The copy of the assessment form used by nurse Spearman, DMA-3000 Rev. 02/07, is not easily readable. A clean copy of the form can be obtained from http://www.google.com/url?sa=t&rct=j&q=dma-3000%20rev.%2002%2F07&source=web&cd=1&cad=rja&ved=0CDIQFjAA&url=http%3A%2F%2Fwww.thecarolinascenter.org%2Fdocuments%2FNCPCS_PACTElectronicForm.doc&ei=QwklUYXEN8S8qAG4jIHYBg&usg=AFQjCNFrWWjMT-ZrQEi_6YTfn7rLPKm6dw&bvm=bv.42661473,d.aWM (last visited 20 Feb. 2013).

[11] Basic activities of daily living are relatively simple self-care tasks while instrumental activities of daily living are more complex tasks associated with independent living. *See*, *e.g.*, Tr. 1174 (listing in a table specific activities of daily living of both types); Leslie Kernisan, M.D. & Paula Spencer Scott, *Activities of Daily Living: What Are ADLs and IADLs?,* http://www.caring.com/articles/activities-of-daily-living-what-are-adls-and-iadls (last visited 20 Feb. 2013).

17

management relating to the bathroom, bedroom and living areas, and errands (Tr. 1174).[12] Plaintiff's primary care physician, John Mann, M.D., certified that plaintiff had limitations warranting the personal care specified. Tr. 1174.

In his decision, the ALJ noted nurse Spearman's determination that plaintiff was independent in decision making and cognitive skills. Tr. 1173, item no. 35. He did not otherwise directly address the opinions expressed by nurse Spearman, although he did address other evidence regarding plaintiff's ability to perform activities of daily living, including plaintiff's testimony and Dr. Mann's opinions. *See* Tr., *e.g.*, 27 ¶ 5; 28-29 ¶ 5. Plaintiff argues that the ALJ erred by ignoring some of nurse Spearman's opinions and not indicating the weight he gave her opinions.

An ALJ, of course, has an obligation to consider the opinions of sources such as nurses and to indicate the weight accorded such opinions. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4-5, *6 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). In light of the court's determination that deficiencies in the ALJ's ruling on Listing 12.05C ruling require remand, the court need not decide whether the ALJ met his obligation to consider and explain the weight accorded nurse Spearman's opinions. The court does note, though, that on remand the ALJ should explain more directly and clearly than in the instant decision what weight, if any, given nurse Spearman's opinions and the reasons for such weight.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion for judgment on the pleadings be ALLOWED, the Commissioner's motion for judgment be DENIED, and this

---

[12] The various activities of daily living are assigned code numbers in the table in the assessment form listing the activities. *See* Tr. 1174.

case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 27 February 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 7 days after service of the objections on the responding party or 6 March 2013, whichever is earlier.

This, the 20th day of February 2013.

James E. Gates
United States Magistrate Judge